UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY KINCY,<br><br>                Plaintiff,<br><br>    v.<br><br>JOSIE GASTELO, et al.,<br><br>                Defendants. | Case No. 2:20-cv-10159-RGK-JC<br><br>ORDER DISMISSING CLAIMS IN FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |

## I. INTRODUCTION

On November 3, 2020, plaintiff Henry Kincy, who is in state custody, is proceeding *pro se*, and has been granted leave to proceed without prepayment of filing fees ("IFP"), filed Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Docket No. 1). On March 12, 2021, the Court screened and dismissed the Original Complaint with leave to amend. (Docket No. 15).

On April 5, 2021, plaintiff filed a First Amended Complaint ("First Amended Complaint" or "FAC"), which was followed by three "Supplemental Exhibit(s)" on April 22, April 23, and June 1, 2021 (collectively "Supplements,"

///

///

individually "Supplement [1, 2 or 3)" or "Supp. [1, 2, or 3]").[1] (Docket Nos. 19, 21, 22, 24). Plaintiff claims that the following defendants associated with the California Men's Colony ("CMC"), who are sued in their individual and official capacities, violated the Eighth Amendment's prohibition against cruel and unusual punishment by exhibiting deliberate indifference to his medical needs:[2] (1) Warden Josie Gastelo;[3] (2) Dr. Mark Kowall, a podiatrist at Sierra Vista Hospital who treated inmates under contract with CDCR; (3) Dr. Steven Sabo, a primary care doctor; and (4) Dr. Haar Johannes, Chief Medical Executive. (FAC at 1, 3-8). Plaintiff seeks monetary relief. (FAC at 9).

///

---

[1] Plaintiff explains that he filed these supplements because he had run out of time when submitting the First Amended Complaint by the deadline. (Supp. 1 at 1). He states that the supplements are "for Clarification to" certain pages in the First Amended Complaint. Supplement 1 includes a revised version of the claims/allegations portion of the First Amended Complaint, which somewhat clarifies or elaborates on his allegations while leaving the substance largely unchanged. (Supp. 1 at 2-5). The remainder of Supplement 1 (after an unchanged request for relief) comprises exhibits that are also similar to those that accompany the First Amended Complaint, with a few variations. (Supp. 1 at 7-24). Supplement 2 includes only a brief declaration by plaintiff. (Supp. 2 at 2). Supplement 3 is a 2018 Decision of the Medical Board of California reflecting that Dr. Sabo was publicly reprimanded as a result of allegations relating to the failure to refer a patient to a specialist, the failure to document a consultation with another doctor, and the failure to maintain adequate and accurate medical records. (Supp. 3). For the purposes of this Order, the Court reviews the Supplements as part of the First Amended Complaint, and considers the revised allegations of Supplement 1 along with their counterparts in the First Amended Complaint. (Citations to plaintiff's filings refer to the page numbers assigned by the Court's official Case Management/Electronic Case Filing (CM/ECF) system.).

[2] More specifically, plaintiff alleges a "[v]iolation of the 8th and 14th Amendment to U.S. Constitution, Cruel and Unusual Punishment; Deliberate Indifference to Medical needs: Estelle v. Gamble, 429 U.S. at 105-06; . . . ." (FAC at 5; Supp. 1 at 2). Given the context and the fact that plaintiff provides no independent predicate for or description of a Fourteenth Amendment violation, the Court construes the First Amended Complaint to refer to the Fourteenth Amendment solely because it made the Eighth Amendment's prohibition against cruel and unusual punishment applicable to the States. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976).

[3] As in the Original Complaint, Warden Gastelo is listed in the caption but is not otherwise mentioned in the First Amended Complaint.

As the First Amended Complaint fails to state a claim against Warden Gastelo and against all defendants in their official capacities, the Court dismisses such claims (hereinafter collectively referred to as "Dismissed Claims") with leave to amend and directs plaintiff to notify the Court as to how he wishes to proceed in connection with this action.[4]

## II. THE FIRST AMENDED COMPLAINT

The First Amended Complaint, liberally construed, alleges the following:

Prior to March 5, 2018, plaintiff was scheduled to see defendant Dr. Kowall, a podiatrist, because an MRI scan ordered by defendant Dr. Sabo, plaintiff's primary care provider, had revealed a torn Achilles. (FAC at 5 ¶ 1; Supp. 1 at 2 ¶ 1). Dr. Kowall determined that plaintiff needed surgery, and plaintiff agreed to it. (FAC at 5 ¶ 2; Supp. 1 at 2 ¶ 1). However, on March 5, 2018, Dr. Kowall decided to change plaintiff to a different, less expensive treatment and issued plaintiff a CAM walker boot, without crutches or other support. (FAC at 5 ¶ 3; Supp. 1 at 2 ¶ 2). Dr. Kowall observed plaintiff walking with an uneven gait while wearing the boot. (FAC at 5 ¶ 3; Supp. 1 at 2 ¶ 3).

On March 14, 2018, while standing in the pill line, plaintiff felt a "sharp popping pain" in his lower back due to the pressure caused by walking unevenly on the single CAM boot. (FAC at 6 ¶ 5; Supp. 1 at 3 ¶ 5). At plaintiff's follow-up appointment thirty days after Dr. Kowall's March 5 issuance of the CAM boot, Dr. Kowall informed plaintiff that the single boot had caused this recent injury. (FAC at 6 ¶ 6; Supp. 1 at 3 ¶ 6). In an assertedly reckless attempt to correct the length discrepancy, Dr. Kowall offered plaintiff a second CAM boot, which plaintiff refused, for fear of worsening the injury. (FAC at 6 ¶¶ 6-7; Supp. 1 at 3 ¶¶ 6-7).

///

---

[4]The Court does not at this juncture dismiss plaintiff's Eighth Amendment individual capacity claims against defendants Kowall, Sabo and Johannes (hereinafter referred to as "Remaining Claims").

On April 11, 2018, defendant Dr. Haar, Chief Medical Executive, denied plaintiff's request for a back brace, even though plaintiff had a history of back pain and was in distress at the time due to the CAM boot injury. (FAC at 8 ¶ 22; Supp. 1 at 5 ¶ 22). The brace would have given plaintiff the support he needed to heal, and would have helped prevent further deterioration that occurred. (FAC at 8 ¶ 22; Supp. 1 at 5 ¶ 22). If Dr. Haar had reviewed plaintiff's medications, he would have understood that plaintiff was in severe pain and needed the back brace to help reduce that pain. (FAC at 8 ¶ 23; Supp. 1 at 5 ¶ 23).

On April 18 and May 1, 2018, plaintiff had to be taken by an emergency vehicle for treatment and medication because he could not walk. (FAC at 6 ¶¶ 8-9; Supp. 1 at 3 ¶¶ 8-9). After plaintiff's second hospitalization on May 1, Dr. Sabo issued plaintiff a four-wheeled walker. (FAC at 7 ¶ 16; Supp. 1 at 4 ¶ 18). On May 17, 2018, Dr. Sabo ordered plaintiff an MRI exam. (FAC at 7 ¶ 17; Supp. 1 at 4 ¶ 18). Because plaintiff could not sit still for long due to the pain, this resulted in only a partial MRI scan. (FAC at 7 ¶ 17).

Plaintiff ultimately underwent a lumbar spinal fusion surgery to repair the injuries caused by the single CAM walker boot. (See FAC at 6-7 ¶¶ 11, 25; Supp. 1 at 2, 5 ¶¶ 4, 22, 25-26). Plaintiff still endures pain and limited mobility, including an inability to sit in certain positions, to stand in one position for long, or to lie on his back. (See FAC at 6-7 ¶¶ 11, 20; Supp. 1 at 2, 4 ¶ 4, 20).

Dr. Kowall caused these harms by issuing plaintiff the single CAM walker boot despite plaintiff's medical history of back pain since before 2014, as well as a prior back surgery in 2016. (FAC at 5-6 ¶¶ 2, 4, 10-11; Supp. 1 at 2-3 ¶¶ 1, 4, 10-11).

Dr. Sabo caused these harms, as well, by sanctioning the use of the single CAM boot even though he knew plaintiff's medical history, had received plaintiff's complaints of increased pain, and had observed plaintiff having difficulty attending appointments with the help of a cane. (FAC at 7 ¶¶ 12-14;

Supp. 1 at 4 ¶¶ 13-17, 19). Dr. Sabo should have consulted with Dr. Kowall about these issues, and not permitted plaintiff to receive treatment (*i.e.*, the single CAM boot) which only worsened his injuries. (FAC at 7 ¶ 18; Supp. 1 at 4 ¶ 19). Dr. Sabo also contributed to plaintiff's further injuries by failing to issue a four-wheeled walker until May 1, and failing to order an MRI exam until May 17, 2018, after months of pleading from plaintiff. (FAC at 7 ¶¶ 16-17; Supp. 1 at 4 ¶¶ 17-18). Dr. Sabo has a history of failing to consult with other physicians and delaying referrals to specialists when treating patients with chronic pain. (FAC at 8 ¶ 21; Supp. 1 at 5 ¶ 21; Supp. 3).

Dr. Haar contributed to plaintiff's injuries and need for surgery by refusing to provide plaintiff with a back brace, as well as by implementing a treatment policy that required chronic care patients with new injuries to be evaluated as though they were new patients. (FAC at 8 ¶¶ 24-26; Supp. 1 at 5 ¶¶ 22, 24-26).

**III.   PERTINENT LAW**

   **A.   The Screening Requirement**

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each

complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing Twombly, 550 U.S. at 555).

     To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements) (emphasis added). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant leave to amend if it is "at all possible" that the plaintiff

could fix the identified pleading errors by alleging different or new facts. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

### B. Section 1983 Claims

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676. (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013). A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Sweeping conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."

8

Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676). Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his subordinates) proximately caused the plaintiff's constitutional injury. OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'") (citation and internal quotation marks omitted).

A suit against a public employee in his official capacity is equivalent to a claim against the state or local government entity that employs the named individual. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009). A plaintiff pursuing claims against defendants in their official capacities must demonstrate that a policy or custom of the

governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law.") (quoting Kentucky, 473 U.S. at 166). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997) (citing Hafer, 502 U.S. at 25).

The Eleventh Amendment bars damages claims in federal court against a state official in his official capacity where the state has not waived, and Congress has not overridden, the state's sovereign immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-71 (1989); Papasan v. Allain, 478 U.S. 265, 276-77 (1986); Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999), cert. denied, 530 U.S. 1261 (2000). To seek injunctive relief, a plaintiff must "identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Los Angeles County v. Humphries, 562 U.S. 29, 35–36 (2010)).

### C. Eighth Amendment

The Eighth Amendment requires prison officials to ensure the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing Farmer, 511 U.S. at 833). Prison officials violate the Eighth Amendment if they are "deliberately indifferent" to an inmate's serious medical needs. See Farmer, 511 U.S. at 834; Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (citation omitted); see also Lopez v. Smith, 203 F.3d at 1131 (examples of "serious medical needs" include "a medical condition that significantly affects an individual's daily activities," and "the existence of chronic and substantial pain"; citation and internal quotations omitted).

To meet the "deliberate indifference" standard, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted), cert. denied, 537 U.S. 1106 (2003), overruled in part on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc), cert. denied, 137 S. Ct. 831 (2017). Allegations of negligence do not suffice. Estelle, 429 U.S. at 105-06; Lopez v. Smith, 203 F.3d at 1131. Thus, inadequate treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a constitutional violation. Estelle, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

When a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation requires a very individualized approach which accounts for the duties, discretion, and means of each defendant. Leer, 844 F.2d at 633-34 (citation omitted). The prisoner must set forth specific facts as to each individual defendant's deliberate indifference. Id. at 634. There must be an affirmative link

///

between a defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976).

**IV.    DISCUSSION**

As explained below, the First Amended Complaint fails to state a claim against Warden Gastelo and against all defendants in their official capacities and such claims are dismissed with leave to amend.

First, as in plaintiff's Original Complaint, the caption on the first page of the First Amended Complaint lists Warden Gastelo as a defendant, but Gastelo is never otherwise mentioned in the First Amended Complaint. As such, the Court cannot discern whether plaintiff actually intends to sue Gastelo in this action – and if so, on what grounds he intends to do so. To the extent that plaintiff's claims against Warden Gastelo depend simply on such defendant's supervisory role, such allegations do not suffice to support a federal civil rights claim. See Taylor, 880 F.2d at 1045 ("There is no respondeat superior liability under section 1983.") (citation omitted). Instead, as stated above, a government official acting in a supervisory capacity "causes" a deprivation only if he/she personally participated in or directed the alleged violation, or if the alleged violation can otherwise be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d at 1207. Plaintiff thus fails to state any claim against Gastelo.[5]

Second, plaintiff fails to state a claim against all defendants in their official capacities. Plaintiff cannot seek damages from defendants in their official capacities because the State – the real party in interest for such claims – is immune from Section 1983 suits for damages. See Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against

---

[5]If plaintiff elects to file a Second Amended Complaint and does not intend to assert a claim against Gastelo, he must remove her name from the caption of such subsequent pleading.

12

the State itself."); Howlett v. Rose, 496 U.S. 356, 365 (1990) (Eleventh Amendment bars suits for money damages against states and their agencies under Section 1983); see also Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under [Section] 1983 in federal court."). Although claims for prospective injunctive relief may be permitted against state officials sued in their official capacities, see, e.g., Doe v. Lawrence Livermore Nat. Lab'y, 131 F.3d 836, 839 (9th Cir. 1997), plaintiff does not seek appropriate prospective non-monetary relief, and it is unclear that any would be available here, as plaintiff gives no indication that further action by defendants would remedy any alleged harms, particularly in light of plaintiff's subsequent back surgery.

## V. ORDERS[6]

In light of the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's claim against defendant Gastelo and his official capacity claims against all defendants are dismissed with leave to amend.

2. Within twenty (20) days of the date of this Order, plaintiff shall do one of the following:

    a) File a Second Amended Complaint which cures the pleading defects in the Dismissed Claims described herein;[7] or

---

[6]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters. See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can dismiss complaints with leave to amend; dismissal of complaint with leave to amend is non-dispositive matter). To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[7]Any Second Amended Complaint must: (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to prior complaints, *i.e.*, it must

(continued...)

b) File either a Notice of Intent to Proceed Solely on Remaining Claims in First Amended Complaint or sign and return the attached Notice of Dismissal which will result in (a) the dismissal of the Dismissed Claims (*i.e.*, any claims against defendant Gastelo and all official capacity claims against all defendants) without prejudice; and (b) this action proceeding solely as to the Remaining Claims (*i.e.*, the Eighth Amendment individual capacity claims against defendants Kowall, Sabo and Johannes).

**Plaintiff is cautioned that plaintiff's failure timely to file a Second Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Proceed Solely on Remaining Claims in First Amended Complaint may result in the dismissal of this action with or without prejudice based on plaintiff's failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: November 24, 2021

                                                    /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued) include all claims on which plaintiff seeks to proceed (including, if plaintiff wishes to proceed thereon, the Remaining Claims that the Court has not dismissed herein); (c) contain a "short and plain" statement of the claim(s) for relief. See Fed. R. Civ. P. 8(a); (d) make each allegation "simple, concise and direct." Fed. R. Civ. P. 8(d)(1); (e) make allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); (f) set forth clearly the sequence of events giving rise to the claim(s) for relief; and (g) allege with sufficient specificity what each individual defendant did and how that individual's conduct violated plaintiff's civil rights. Plaintiff may not change the nature of this suit by adding new, unrelated claims or defendants in any Second Amended Complaint. Cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (prisoners may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).